UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD ALLEN MOORE, § § | |
| Plaintiff, § § § | CIV NO. 06-cv-4112 |
| v. § § | |
| JOHN E. POTTER, POSTMASTER § GENERAL § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 19.) For the following reasons, Defendant's Motion must be granted.

### I.   BACKGROUND

Plaintiff Richard Allen Moore is an African-American male over forty years old. He worked for the United States Postal Service ("USPS") in their Katy, Texas, office USPS for twenty-three years and, until the events described below, had never been disciplined. His last role at USPS was as a letter carrier. Plaintiff claims that he was subject to discrimination and harassment for four separate incidents:

> (1) on October 14, 2005 "and continuous" his carrier case was changed from a four-case shelf to a five-case shelf;
> (2) on October 20, 2005, he was placed in an off-duty status (without pay);
> (3) he was issued a notice of proposed removal dated December 2, 2005, charging that he assaulted a supervisor on October 20, 2005; and
> (4) on February 3, 2006, he was not paid official time for attending a mediation session on his complaint with the EEO.

(Pl. Compl., Doc. No. 1, 3)

Plaintiff alleges that he did not assault his supervisor and that a number of witnesses confirm that Plaintiff was in no physical or mental condition to have committed the assault. Following this incident involving the alleged assault, the USPS issued Plaintiff a notice of proposed removal on December 2, 2005, and a decision letter dated December 19, 2005, with an effective date of January 6, 2006, upholding the proposed removal. (Pl. Compl., Doc. No. 1, Ex. A, 1.) In the December 19, 2005 letter, the USPS explained that "[i]f you believe that the action is based in whole or in part on discrimination, you have the option of filing an appeal with the Merit Systems Protection Board ("MSPB"), or filing an EEO complaint with the Postal Service, but not both." (Doc. No. 19, Ex. 2, 1.) Plaintiff appealed the removal to the MSPB on January 11, 2006. (*Id.*) In a letter dated January 30, 2006, he requested that his MSPB appeal be withdrawn. (Doc. No. 19, Ex. 4-B, 2.) The appeal was dismissed as withdrawn on February 22, 2006, and the initial decision became final March 9, 2006. (*Id.*) Plaintiff appealed again on May 30, 2006, but that appeal was dismissed for lack of jurisdiction.

Plaintiff contacted an EEO counselor on December 6, 2005, regarding incidents one through three described above. On March 7, 2006, the Plaintiff received the EEO counselor's notice of his right to file a mixed complaint as well has his right to file an age discrimination claim. (EEO Dispute Resolution Specialist's Inquiry Report, Doc. No. 19, Ex. 1, at 2.) Plaintiff contacted an EEO counselor regarding the fourth incident, on April 17, 2006. (Doc. No. 19, Ex. 5.) On April 21, 2006, the agency dismissed Plaintiff's claims for failure to timely seek EEO counseling and because he elected to proceed in the MSPB forum rather than the through the EEO of the USPS. (Doc. No. 19, Ex. 8.) On September 28, 2006, the EEO office entered a decision on Plaintiff's appeal of the final

agency decision dismissing his complaint of unlawful employment discrimination. (Doc. No. 1, Ex. A, 2.) Plaintiff filed his complaint in this Court on December 28, 2006.

Plaintiff now brings claims against Defendant John E. Potter, in his capacity as Postmaster General of the United States of America, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(c), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 633a(c), and the Rehabilitation Act, 29 U.S.C. 794. Plaintiff seeks damages for back pay, restoration of sick leave, reimbursement of medical and psychological expenses, litigation fees and costs, and interest. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d

1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. PLAINTIFF'S TITLE VII CLAIMS

#### A. Failure to Timely Contact an EEO Counselor

Defendant argues that Plaintiff failed to timely contact an EEO counselor for three of the incidents. Consequently, it contends that Plaintiff's Title VII claims must be dismissed for failure to exhaust administrative remedies. Plaintiff does not respond to Defendant's argument.

A federal employee who believes he has been discriminated against must contact an EEO officer within 45 days of the alleged discriminatory action, or within 45 days of the effective date of a personnel action. 29 C.F.R. § 1614.105(a). If the employee shows that he was not notified of the time limits, was not aware of them, or that he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, or for reasons the EEO Commission considers sufficient, then the Commission shall extend the time limit. 29 C.F.R. § 1614.105(a). The EEOC promulgated the regulations on time limits pursuant to its delegated powers under the civil rights statutes. *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 439 (5th Cir. 1986).

The Fifth Circuit is split over whether EEO deadlines are prerequisites to suit (such that they are waivable) or are jurisdictional. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) (collecting cases but not resolving the split). The Fifth Circuit

4

recently upheld a dismissal of a Title VII claim for failure to exhaust administrative remedies because the plaintiff did not timely contact the EEO officer. *Vidal v. Chertoff*, No. 07-40705, 2008 WL 4280320, *5 (5th Cir. Sept. 19, 2008). The *Vidal* court did not decide whether the district court had the power to equitably toll the time limits, because it concurred with the lower court that, even if the district court had the power to toll the time limit, it should not. *Vidal*, 2008 WL 4280320 at *3.

Equitable tolling generally applies in the following situations: when a case is pending between the parties in the wrong forum; when the claimant does not know or should know the facts giving rise to his Title VII claim; when the EEOC misleads the claimant about the nature of her rights under Title VII; and possibly, when the claimant is mentally incapacitated. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir.2003); *Hood v. Sears Roebuck and Co.*, 168 F.3d 231, 232 (5th Cir. 1999) (evaluating plaintiff's claim of mental incapacity and declining to toll on that basis); *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302 (5th Cir. 1979).

In this case, incidents one and two occurred October 14th and 20th, respectively, and Plaintiff did not contact an EEO counselor until December 6, 2005. Similarly, incident four occurred on February 3, 2006, and Plaintiff did not contact an EEO counselor until April 17, 2006. For each of these incidents, Plaintiff failed to contact an EEO counselor within 45 days of the incident, and the Commission did not extend the time limit. (Doc. No. 19, Ex. 8.) Plaintiff has provided no evidence that he was mentally incapacitated such that he could not contact an EEO official within the 45 days. Plaintiff provided a letter, purportedly from his doctor, stating that he was severely stressed on October 20, 2005, and he had elevated blood pressure, anxiety, and mental disturbances,

5

but, assuming that the author was his doctor, his doctor did not indicate any long-lasting impairment. (Doc. No. 28, Ex. A.) Further, the Plaintiff was aware of his Title VII rights: EEO posters, that provide the contact person for EEO matters and the time limits for contacting an EEO counselor, were on display at the Katy, Texas Post Office on October 14, 2005. (Doc. No. 19, Ex. 1, 6.) Assuming that it has such discretion, the Court will not exercise it to toll time limits for the EEO prerequisites to suit. Plaintiff's Title VII claims based on incidents one, three, and four will therefore be dismissed with prejudice.

### B. Plaintiff's Election to Proceed Before the MSPB

Defendant argues that Title VII claims arising out of the termination decision should also be dismissed. Although it concedes that the EEO counselor was contacted within 45 days of the incident, Defendant contends that Plaintiff failed to exhaust his administrative remedies in his chosen forum, and therefore judicial review is foreclosed. Plaintiff responds that he did not file a mixed case appeal to the MSPB.[1] Plaintiff claims that he filed a complaint with the EEO of the USPS alleging discrimination in connection with the termination decision, and filed an MSPB complaint appealing his termination, without alleging discrimination. Plaintiff contends that he could not have filed a mixed case appeal with the MSPB because he was not given notice of his right to file a mixed case until after he filed his MSPB appeal.

If the complainant believes that discrimination motivated the agency's decision, a complainant may elect to file a mixed case appeal with the MSPB or a complaint with the agency's EEO, but not both. 5 U.S.C. § 7702(a)(1)(B)(i)-(ii), (a)(1)(B)(iv) (providing the

---

[1] A "mixed case" appeal to the MSPB is an appeal that alleges that an appealable adverse personnel action was effected, in whole or in part, because of discrimination. 29 C.F.R. § 1614.302(a)(2). If the appeal to the MSPB does not involve charges of discrimination, the complainant may file an appeal to the MSPB solely challenging the adverse personnel action and separately file an EEO complaint alleging discrimination.

MSPB jurisdiction to hear mixed case appeals including claims under Title VII, the Rehabilitation Act, and the ADEA); 29 C.F.R. § 1614.302(b). Whichever is filed first is considered an election to proceed in that forum. *Id.*; *Casimier v. Potter*, 142 Fed. Appx. 201, 204, 2005 WL 1553997 (5th Cir. 2005) (holding that plaintiff's discrimination claim before the EEO was foreclosed, in part, by his election to appeal his removal to the MSPB rather than file a complaint with the agency's EEO). The federal agency's EEO must dismiss a complaint if the complaint raises a matter also on appeal to the MSPB. 29 C.F.R. § 1614.107(a)(4).

Further, if a claimant proceeds before the MSPB, he must wait until it takes final action before seeking judicial review of his Title VII claims. 5 U.S.C. § 7702(a)(3); 5 C.F.R. § 1201.157, 1201.161(b).[2] When a claimant abandons his action before the MSPB, he has not exhausted his remedies in that forum. *See Economou v. Caldera*, 286 F.3d 144, 150 (2nd Cir. 2002) (holding that a claimant has failed to exhaust his administrative remedies for his Title VII, ADEA, and Rehabilitation Act claims when he made a mixed-case appeal to the MSPB, abandoned his appeal, and proceeded to file a complaint with the EEO);[3] *Stoll v. Principi*, 449 F.3d 263, 266-67 (1st Cir. 2006); *McAdams v. Reno*, 64

---

[2] The Rehabilitation Act's exhaustion requirements are analogous to those under Title VII. *See Prewitt v. USPS*, 662 F.2d 292, 303, 304 (5th Cir. 1981).

[3] There is a circuit split regarding whether a plaintiff, who chooses to pursue his ADEA claim through an administrative system, must then exhaust those administrative remedies before filing a civil action. The Supreme Court granted certiorari to resolve this split but, prior to its decision, the Government abandoned its exhaustion claim, and the Supreme Court declined to address the issue. *Stevens v. Dep't of Treasury*, 500 U.S. 1, 11 (1991) (Stevens, J., dissenting) (opining that the Court should have clarified that the ADEA contains no administrative exhaustion requirement). Subsequently, the Ninth Circuit declined to dismiss an ADEA claim for failure to exhaust administrative remedies when a claimant voluntarily dismissed his MSPB appeal and then filed a civil ADEA claim. *Bankston v. White*, 345 F.3d 768 (9th Cir. 2003); *Adler v. Espy*, 35 F.3d 263 (7th Cir. 1994) (remanding lower court decision requiring administrative exhaustion where plaintiff's EEOC complaint was dismissed, pursuant to a regulation, when he filed suit in civil court). In an unpublished decision, the Fifth Circuit relied on its holding in *White v. Frank* to dismiss an ADEA and a Rehabilitation Act claim for failure to exhaust chosen administrative remedies. *Bowers v. Nicholson*, 271 Fed. Appx. 446, 449 n. 8, 2008 WL 828845 (unpublished) (5th Cir. Mar. 28, 2008) (dismissing plaintiff's Title VII, Rehabilitation Act, and ADEA claims for failure to exhaust administrative

F.3d 1137, 1141-42 (8th Cir. 1995) (holding that claimant who abandoned her Title VII claims before the MSPB could not assert them in a separate civil action); *Harms v. Snow*, 57 Fed. Appx. 720, 2003 WL 1192594, *1 (8th Cir. 2003) (holding that claimant who abandoned his Americans with Disabilities Act and Title VII claims before the MSPB is precluded from raising them in a separate civil action); *Smith v. O'Keefe*, 03:07-cv-5900, 2006 WL 2167716, *5 (S.D. Tex. July 31, 2006).

Here, Defendant argues that Plaintiff was notified of his right to elect to file either a mixed case complaint to the MSPB or to file an EEO complaint with the USPS prior to Plaintiff's filing his MSPB appeal on January 11, 2006. Plaintiff filed his formal EEO complaint on March 2, 2006. (Doc. No. 19, Ex. 7.) Plaintiff asserts that he did not file an MSPB mixed case appeal because he was not notified of the possibility of electing a mixed-case MSPB until March 2, 2006, and because he raised no issues of discrimination in his January 10, 2006, MSPB appeal. As Plaintiff contends, he was informed of the mixed case election procedures in a letter he received from the EEO Alternative Dispute Resolution Specialist, sent March 2, 2006. (Doc. No. 19, Ex. 2, at 5-9.) However, Plaintiff was also notified of his rights to file a mixed case appeal in a letter sent December 19, 2005, that Plaintiff confirmed he received on December 19, 2005, and that he cited in his MSPB appeal. (Doc. No. 19, Ex. 2; Ex. 4, at 4; Doc. No. 31, Ex. 2, at 16-17.) In that letter, Dave Vale, Manager of Post Office Operations, informs Plaintiff that "[i]f you believe that the action is based in whole or in part on discrimination, you have the option of filing an appeal with the MSPB, or filing an EEO complaint with the Postal Service, but not both."

---

remedies where plaintiff allegedly withdrew his EEOC complaint by mistake and then filed a civil action in federal court).

Plaintiff also contends that the MSPB appeal shows that Plaintiff raised no issue of discrimination. Defendant responds that, in his appeal, Plaintiff checked a box indicating that he was making a claim "that the agency action or decision was the result of prohibited discrimination." (Doc. No. 19, Ex. 4, at 7.) As Plaintiff correctly argues, the decision of the administrative judge in Plaintiff's second appeal does not discuss any discrimination claims, but rather discusses its lack of jurisdiction because Plaintiff withdrew his right of appeal to the MSPB in February and then tried to reassert it in May. (Doc. No. 19, Ex. 4-B, at 2-5.) Further, in Plaintiff's memorandum attached to his January 8, 2006, appeal, he does not allege discrimination claims.

Plaintiff does not contest that he filed his MSPB appeal prior to his EEO complaint. If Plaintiff's MSPB appeal was a mixed case appeal, it would bar further EEO proceedings on the Title VII claims as discussed above. If the MSPB appeal was not a mixed case, however, then any judicial recourse arising out of that appeal must properly be in the Federal Circuit, assuming the appeal addressed an appealable personnel decision. 5 U.S.C. § 7703(2)(b)(1); *compare Williams v. Wynne*, 533 F.3d 360, 373 n. 2 (5th Cir. 2008) (holding that the district court had jurisdiction over the appeal because it alleged a retaliation claim for protected activity), *with Meehan v. USPS*, 718 F.2d 1069, 1073-74 (Fed. Cir. 1983) (holding that the federal circuit had jurisdiction over the judicial action arising out of claimant's MSPB appeal where he made no assertions of, and provided no evidence of, discrimination in his MSPB appeal). If, however, the Plaintiff in good faith attempted to navigate the administrative system but, relying on confusing information from the agency, his EEO complaint was dismissed because his MSPB

appeal was withdrawn, he should not be foreclosed from judicial review. *Broom v. Caldera*, 129 F.Supp.2d 25, 32 (D.D.C. 2001).

The Government does not claim that Plaintiff failed to exhaust his administrative remedies regarding the ADEA and Rehabilitation Act claims arising out of Plaintiff's termination;[4] consequently, the Court will evaluate them on their merits. Similarly, assuming, without deciding, that Plaintiff, in good faith, attempted to navigate the MSPB/EEO system, and because it seems unduly technical to bar review of the Title VII discrimination claim based on Plaintiff's termination where the only evidence of a mixed case appeal was a checked box, the Court will also evaluate the Title VII termination claim on the merits.

## IV. AGE and TITLE VII RACE DISCRIMINATION CLAIMS

### 1. Standard

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age over 40 years; under Title VII, race) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Reeves*, 530 U.S. at 141. ADEA and Title VII race discrimination claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

---

[4] In its response to Defendant's Motion for Summary Judgment, Plaintiff asserts ADEA and Rehabilitation Act claims based on his termination and other conduct discussed, *infra*.

> *McDonnell Douglas* instructs that the plaintiff must first establish a *prima facie* case of [age discrimination]. . . . Once the plaintiff presents a *prima facie* case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). If the plaintiff can establish that defendant's articulated reason is pretext, and if the *prima facie* case is sufficiently strong, a trier of fact may be able to conclude that the employer unlawfully discriminated without additional evidence. *See Reeves*, 530 U.S. at 148 (finding that the district court properly submitted the case to the jury). Such a showing will not always be sufficient: whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49).

In order to establish a prima facie case of age discrimination for wrongful termination, a plaintiff must show: (i) he belonged to the protected class (over 40 years of age); (ii) he was otherwise qualified for his position; (iii) he was discharged; (iv) employer (a) subsequently hired people outside the protected class to fill the position, (b) replaced him with someone younger and (c) he was otherwise discharged because of his age. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *Price*, 283 F.3d at 719-20; *Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998). To establish a prima facie case of wrongful termination for racially-motivated

discrimination, the plaintiff must show (i) he belonged to the protected class (African-American or black); (ii) he was otherwise qualified for his position; (iii) he was discharged; and (iv) his employer subsequently hired people outside the protected class to fill the position, or he was otherwise discharged because of his race. *St. Mary's Honor Center*, 509 U.S. at 506; *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004). A plaintiff can fulfill the fourth element if he proves that she was discharged under circumstances in which an employee of a different race would not have been discharged, irrespective of the race of his replacement. *E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 340-341 (1982).

If the defendant meets its burden of production, "the McDonnell Douglas framework—with its presumptions and burdens" disappears, and "the sole remaining issue" is "'discrimination vel non.'" *Reeves*, 530 U.S. at 142-43 (citing *St. Mary's Honor Center*, 509 U.S. at 510)). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). To satisfy that burden, the plaintiff "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"[5] *Id.* (citing *Burdine*, 450 U.S. at 256). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap*

---

[5] The plaintiff may also show that the defendant's articulated reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic ("mixed motive alternative"). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If a plaintiff shows that discrimination was a motivating factor in a mixed-motives case, defendant must then respond with evidence that the same employment decision would have been made regardless of discriminatory motivation. *Rachid*, 376 F.3d at 312 n.8 (citing 42 U.S.C. § 2000e-2(m)).

*Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)); *see also Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (finding that an employer's inconsistent explanations for its employment decisions at different times may permit a jury to infer that the proffered reasons are pretextual).

Importantly, "although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (citing *St. Mary's Honor Center*, 509 U.S. at 510; *Burdine*, 450 U.S. at 255, n. 10). On the other hand, even if the plaintiff presents some evidence that the defendant's legitimate non-discriminatory reason is false or a pretext, "such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 148). As the Supreme Court has explained, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Center*, 509 U.S at 511. In a case in which plaintiff shows a defendant's legitimate, non-discriminatory reason is false, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" *Price*, 283 F.3d at 720 (citing

*Reeves*, 530 U.S. at 148-49.); *see also Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000) (stating that a plaintiff can avoid summary judgment when the "evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [age or race] was a determinative factor in the actions of which the plaintiff complains").

### B. Analysis of Plaintiff's Age Discrimination Claim

Defendant argues that Plaintiff has failed to present evidence of age discrimination because all proffered evidence is conclusory and unsubstantiated. Plaintiff responds that two women under forty were accommodated, never harassed, and were treated better than the Plaintiff.

It is undisputed that Plaintiff was over 40 at the time of the events, and he was terminated. Further, he was qualified for the position. Evidence that an employer was not pleased with a plaintiff's job performance does not prove a lack of qualifications at the prima facie stage. *Berquist*, 500 F.3d at 350-51. Plaintiff held a job at the Post Office for twenty-three years, and neither party contests that he had the qualifications to serve in his role as letter carrier.

Plaintiff has failed to establish a prima facie case of age discrimination. Plaintiff has provided no evidence that, after his termination, the USPS hired someone under forty, or otherwise younger than he, to fill his vacant position. In addition, Plaintiff has failed to produce evidence competent to satisfy the "similarly situated" requirement. In order to provide circumstantial evidence of discrimination, the situations of the disciplined plaintiff and the non-protected class comparator must be "nearly identical." *Perez v.*

*Texas Dept. of Criminal Justice, Institutional Division*, 395 F.3d 206, 213 (5th Cir. 2004); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam). Likewise, the Plaintiff must be similarly situated to his comparator in the eye's of the employer's organization with respect to the employee's position in the organization and conduct. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000).

Here, Plaintiff provides evidence that (1) Laura Steele, a Caucasian female under 40 was accommodated and not harassed and (2) Linda Sharp McKay, a Caucasian female letter carrier under 40, never carried mail. (Doc. No. 27, at 4.) Plaintiff contends that both alleged comparators were also letter carriers, although one of them was promoted to a supervisory role. Plaintiff, however, has presented no evidence that either of these employees was allegedly involved in any altercation with a supervisor, and has provided no evidence of their particular disabilities or how these disabilities were specifically accommodated.

Plaintiff asserts that he also was not involved in an assault involving Supervisor McIntosh. (Pl. Aff., Doc. No. 28, Ex. 1.) Courts, however, are not charged with examining the validity of the employer's initial complaint, but rather whether the employer reasonably believed the other employee's allegation and acted in good faith upon that belief. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165-66 (5th Cir. 1993). Title VII provides no protection from arbitrary or even erroneous personnel decisions, only those unlawfully motivated. *See Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988). The USPS conducted a full investigation of the event and

concluded that an assault occurred. Plaintiff has provided no evidence to create a material fact regarding whether the USPS reasonably believed Supervisor McIntosh's allegation.

Beyond wrongful termination, a plaintiff may also sustain an employment discrimination claim on the basis of other adverse employment actions. Plaintiff contends that, unlike his alleged comparators, he was harassed about his disability because he was forced to bring in supporting documentation for a condition that required medication, and he was required to finish another carrier's work after his own route. (Doc. No. 27, at 6.) Adverse employment decisions are only "ultimate employment decisions" such as hiring, firing, granting leave, discharging, promoting and compensating, and an action that does not affect job duties, compensation or benefits is not an adverse employment action. *Pegram*, 361 F.3d at 282. An adverse employment action must "affect employment" or "alter the conditions of the workplace." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 67 (2006) (holding that Title VII's substantive provision and anti-retaliation provision are not coterminous and explaining the scope of the Title VII substantive provision). Employment discrimination statutes were not intended to reach every employment decision and adding tasks or changing schedules do not qualify as adverse employment actions, if the changed responsibilities do not affect pay, a condition of the workplace. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999). Forcing a plaintiff to produce documentation regarding his medical condition does not rise to the level of an adverse employment action.[6] Defendant's Motion should be granted as to Plaintiff's age discrimination claim.

---

[6] Although Plaintiff does not allege a harassment claim, he also would not have evidence to support that claim. In order for evidence to sufficiently ground a claim of harassment, the plaintiff must prove (i) he was a member of a protected class (ii) he was subject to unwelcome harassment (iii) the harassment was motivated by his membership in a protected class; (iv) harassment affected a term or condition of his

### C. Analysis of Plaintiff's Race Discrimination Claim

In support of his race or color (collectively referred to as "race") discrimination claim, Plaintiff alleges that four Caucasian employees were accommodated and not harassed concerning their disabilities, and one African-American female employee allegedly hit a supervisor with a hamper, but was not put off the clock. Plaintiff has met his burden as to elements one, two, and three of a prima facie case. He is African-American, was qualified for his job, and was terminated.

Again Plaintiff fails to meet his burden under element four. Plaintiff does not assert that a non-African American was hired to replace him. Further, as before, all of the purported comparators do not appear "nearly identical" to Plaintiff. The first four alleged comparators were not terminated because their employer determined that they assaulted a supervisor. Plaintiff alleges that the fifth comparator was involved in the assault of a supervisor. Plaintiff claims that Supervisor McIntosh claimed that Johnnie Stewart hit her twice with a mail hamper, but Stewart was not fired. (Doc. No. 27, at 7.) Plaintiff provides no evidence of this incident, and similarly provides no evidence that the USPS found that Stewart had in fact assaulted a supervisor, as they did him. Plaintiff's evidence is insufficient to sustain a prima facie case of race discrimination. Defendant's motion should be granted as to Plaintiff's race discrimination claim.

## V. REHABILITATION ACT CLAIMS

---

employment; and (v) employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). The fourth element must be demonstrated through evidence that the harassment was so severe as to create an abusive working environment. *Celestine*, 266 F.3d at 353. The Fifth Circuit has held that even egregious conduct does not create such an abusive environment where it is infrequent, and did not unreasonably interfere with work performance such that plaintiff's opportunity to succeed in the workplace was severely impaired. *Shepherd v. Public Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999). Consequently, Plaintiff's allegations do not rise to the level of a hostile work environment.

17

Defendant claims that Plaintiff has failed to demonstrate a prima facie case of disability discrimination because he has failed to establish that he is a qualified individual under the Americans with Disabilities Act, and because he cannot demonstrate that he was terminated because of his alleged disabilities.

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show he: (1) was an individual with a disability; (2) was otherwise qualified; (3) worked for a federal agency; (4) suffered an adverse employment action; and (5) was denied the benefits of his employment or subjected to discrimination solely because of his disability. *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). The remedies, procedures and rights of Title VII govern Rehabilitation Act claims. *Pinkerton*, 528 F.3d at 517; 29 U.S.C. § 794a(a)(1). Furthermore, the Rehabilitation Act incorporates the standards used in Americans with Disabilities Act ("ADA") claims, claims that are subject to the Title VII burden-shifting analysis. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

Plaintiff states that he has a disability that involves his back, knees, and severe hypertension. (Doc. No. 27, at 4-5.) Assuming, without deciding, that Plaintiff had a disability, Plaintiff has established elements two through four of his prima facie case. Plaintiff, however, has not provided evidence sufficient to conclude that his alleged disability was the sole factor in the employer's decision to terminate him.

Plaintiff provides the following evidence of disability discrimination. Plaintiff claims that McIntosh and Postmaster Hoobler required Plaintiff to go back to his doctor three times to bring medical documentation, and was required to take a form to his doctor

to request light duty, even though he had been carrying his route in fewer than eight hours without assistance. (Doc. No. 28, at 5.) Defendant admits that it suggested that Plaintiff ask his doctor to complete a form regarding his medication and that it asked him to return to his doctor to fill out the form because the doctor's letter he submitted did not substitute for the form. (Doc. No. 19, Ex. 2, at 5.) Plaintiff further alleges that McIntosh and Hoobler conspired to harass him about his medical documentation to provoke him to become violent so they could terminate him. (Doc. No. 28, at 7.) Plaintiff further claims that Hoobler and McIntosh forced him to finish another carrier's route after he had finished carrying his own. (Doc. No. 28, at 6.) He alleges that McIntosh was "continually messing with [him]" and changed his route while he was on vacation. (Doc. No. 28, at 6.) Plaintiff proffers the same comparators as for his race discrimination claim, but provides no specific evidence of their disabilities. For most of the comparators, Plaintiff does not explain how their disabilities were accommodated. He does allege that Linda McKay, a white female letter carrier, never carried mail. He does not provide evidence, however, that she was similarly situated to him in terms of her alleged disability or her discipline record.

Like the ADEA and other anti-discrimination statutes, the ADA, and by analogy the Rehabilitation Act, cannot protect an employee from erroneous or even arbitrary employment decisions, only those unlawfully motivated. *Armstrong v. Turner Industries*, 141 F.3d 554, 560 n. 16 (5th Cir. 1998) (citing *Bienkowski*, 851 F.2d at 1508). Plaintiff provides no evidence that other purportedly disabled people were not required to submit documentation regarding their medication. *Hancock v. Potter*, 531 F.3d 474, 479 (7th Cir. 2008) (holding that plaintiff failed to make out a prima facie case of disability

discrimination because she did not establish that a similarly situated employee was treated differently because that employee was not disabled). Further, Plaintiff alleges that McIntosh and Hoobler conspired to harass him, that they required him to finish another carrier's route because of his disability, and that McIntosh "was messing with him." Plaintiff's subjective belief that these actions were motivated by discriminatory animus, without more, is insufficient evidence to support a claim of discrimination based on disability. Plaintiff's Rehabilitation Act claim should be dismissed.

## V.    CONCLUSION

Defendant's Motion for Summary Judgment, (Doc. No. 19), is **GRANTED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** this 17th day of December, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE